IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| R. L. R., | CV 17-80-M-JCL |
| Plaintiff, | |
| vs. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff R. L. R. brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Plaintiff alleges disability since April 30, 2009, due to degenerative disc disease, depression, jaw pain, ulcers, and high blood pressure. (Doc. 6, at 138). Plaintiff's claim was denied initially and on reconsideration, and she requested an administrative hearing which took place in July 2015. Plaintiff was not represented by an attorney or other representative at the administrative hearing. In December 2015, the Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled within the meaning of the Act. The Appeals

Council denied Plaintiff's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff was 52 years old at the time of her alleged onset date and 59 years old at the time of the ALJ's decision.

## I. Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the

Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193

(*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court

"may not substitute its judgment for that of the Commissioner." *Widmark*, 454

F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.    <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability

to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which...has lasted or can be expected

to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at

1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a

five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. The

claimant bears the burden of establishing disability at steps one through four of this

process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the

ALJ considers whether the claimant is engaged in substantial gainful activity. 20

C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). At step two, the ALJ must

determine whether the claimant has any impairments that qualify as severe under

the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ

finds that the claimant does have one or more severe impairments, the ALJ will

compare those impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, however, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v).

## III.   Discussion

The ALJ found at step one that Plaintiiff met the insured status requirements of the Act through September 30, 2015, and had not engaged in substantial gainful activity since her April 20, 2009, alleged onset date. At step two, the ALJ found that Plaintiff's degenerative disc disease of the cervical spine was a severe impairment. At step three, the ALJ concluded that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. The ALJ further found that while Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the severity of those symptoms were not entirely credible. The ALJ determined that Plaintiff had the residual functional capacity to perform a full range of medium work. The ALJ then found that Plaintiff was not disabled at step four because she could perform past relevant work as a customer service representative and equipment rental manager. (Doc. 6 at 28-42).

Plaintiff, who is now represented by counsel, argues the ALJ's residual functional capacity assessment is not supported by substantial evidence and raises several issues on appeal. First, she argues the ALJ erred at step two by overlooking and omitting several severe impairments. Second, Plaintiff contends the ALJ did not provide sufficient reasons for rejecting various medical and other source opinions. Third, Plaintiff argues the ALJ did not provide sufficient reasons for discounting her subject symptom testimony. Finally, Plaintiff maintains the ALJ failed to fully and fairly develop record in light of her mental impairments and unrepresented status.

## A.    Severe Impairments

Plaintiff argues the ALJ erred at step two by failing to consider several

severe physical and mental impairments. An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); 416.921. An impairment may be considered non-severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. See SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). The step two "inquiry is a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

With respect to her physical impairments, Plaintiff argues the ALJ should have found that her left knee condition, insomnia, gastroesophageal reflux disease (GERD) and temporomandibular joint dysfunction were severe impairments. But Plaintiff does not elaborate on this argument at all, and does not point to any medical evidence establishing that these particular impairments had anything more than a minimal effect on her ability to work. In fact, the ALJ found no evidence that Plaintiff had been treated for TMJ and noted the medical records showed that her left knee condition had improved. The ALJ further found that although Plaintiff had been evaluated and treated for GERD, the condition was being managed medically and no aggressive treatment had been recommended. (Doc. 6, at 316-420; 434, 454-65).

Plaintiff also argues the ALJ should have found that her lower back pain was a severe impairment, and points to medical records reflecting that she had been treated for chronic low back pain. The ALJ recognized that Plaintiff had been treated for chronic low back pain but found it was not a severe impairment because it too was being managed medically and no aggressive treatment had been recommended. Even if the ALJ erred by not identifying low back pain as a severe impairment, the error was harmless because she found that Plaintiff's degenerative disc disease was a severe impairment and considered Plaintiff's back pain when assessing her residual functional capacity. See *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that where the ALJ considered evidence relating to an impairment at step four, any error in failing to identify that impairment as "severe" at step two was harmless). The ALJ's step two assessment with respect to the severity of Plaintiff's physical impairments is thus supported by substantial evidence.

With respect to her mental impairments, Plaintiff argues the ALJ erred by finding that her anxiety and depression were not severe. She points to various treatment notes reflecting that she has been treated for depression and anxiety, and relies primarily on one note from February 2015 indicating that her symptoms had worsened. (Doc. 6, at 474). But read as whole, Plaintiff's medical records support

the ALJ's finding that Plaintiff's mental impairments did not significantly limit her ability to perform basic mental work activities. As the ALJ discussed, Plaintiff consistently showed appropriate mood and affect, good judgment and insight during her examinations. (Doc. 6, at 392, 395, 398, 408, 413, 416, 425, 427, 454, 462). Thus, while notes from one visit in February 2015 reflect that her symptoms were worse, on the whole Plaintiff's medical records reflect that her anxiety and depression were well-managed and did not cause significant limitations.[1]

As required by regulation, the ALJ considered the four functional areas used to evaluate mental disorders and found that Plaintiff had no limitations in daily activities or social functioning, mild limitations in concentration persistence or pace, and no episodes of decompensation. (Doc. 6, at 32). The ALJ noted that Plaintiff described engaging in a full range of daily activities, including tending to her own personal care, performing chores, preparing meals, and going for walks. With respect to social functioning, the ALJ found no limitations based on evidence that Plaintiff gets out of her apartment every day, walks to library almost daily and stays there for about an hour and a half, uses public transportation, engages on

---

[1] To the extent the opinion of licensed clinical social worker Nathan Hoyne suggested that Plaintiff's anxiety and depression caused significant limitations, the ALJ provided germane reasons for rejecting Hoyne's opinion as discussed below in the section addressing "other source" evidence.

social media, visits with neighbors and family members, and gets along well with authority figures. The ALJ further found that Plaintiff had only mild limitations in concentration, persistence, and pace based on evidence that during her daily library visits she reads several newspapers, looks and magazines, and uses the computer. Finally, the ALJ found there was no evidence that Plaintiff had ever had any episodes of decompensation, and had never had any inpatient mental health treatment. The ALJ reasonably found based on Plaintiff's reported activities and the other evidence of record that Plaintiff suffered from depression and anxiety, but that those impairments did not cause more than a minimal effect on her ability to work.

### B.    Medical Opinions

Plaintiff maintains the ALJ erred by discounting opinions provided by treating physicians Dr. Kate Krebsbach, Dr. Chris Gill, and Dr. Kevin Chin – all of whom were affiliated with Partnership Health Center.

Where there are conflicting medical opinions in the record, "the ALJ is charged with determining credibility and resolving the conflict." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). An

ALJ may reject the uncontradicted opinion of a treating or examining physician only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To discount the controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Plaintiff maintains the ALJ did not give enough weight to the "opinions" of Dr. Krebsbach, Dr. Chin, and Dr. Gill, but for support simply cites to various treatment notes. (Doc. 23, 18). For example, she cites to a March 2015 note from Dr. Gill reflecting that Plaintiff was being treated for depression and anxiety, and was experiencing left knee pain. (Doc. 6, at 460). She also cites to a January 2014 note from Dr. Chin, reflecting that he treated her at that time for a lumbar strain. (Doc. 6, at 409).[2]

---

2 The remaining treatment notes Plaintiff refers to for support are from different providers, including physician assistant Lila Erickson (doc. 6, at 423, 415) and licensed clinical social worker Nathan Hoyme (doc. 6, at 466). Because Erickson and Hoyme are not acceptable medical sources under the applicable regulations, Plaintiff's argument that the ALJ did not properly weigh their opinions is addressed below in the section addressing "other source" evidence.

As defined by regulation, a medical opinion is a statement from a physician or other acceptable medical source that reflects a judgment about the nature and severity of a claimant's impairments, including her symptoms, diagnosis and prognosis, and what she can still do despite his impairments, and her physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). The two treatment notes from Dr. Gill and Dr. Chin that Plaintiff relies on do not contain any assessment of Plaintiff's restrictions, and simply provide a snapshot of her symptoms on those particular visits. As such, they are not medical "opinions" that the ALJ was required to specifically discuss and either credit or reject.

It clear from the ALJ's decision that she considered the medical records from Partnership Health Center, which included the treatment notes of Dr. Krebsbach, Dr. Gill, and Dr. Chin. The ALJ referred to those records several times, noting for example that they indicated Plaintiff had been treated for anxiety and depression, and "had a 20-year history of back/neck pain that was treated with pain medication." (Doc. 6, at 32, 37). The ALJ thoroughly summarized these records, which showed that medications were relatively effective in controlling Plaintiff's symptoms. (Doc. 6, at 37-39). The ALJ reasonably found that these records were consistent with the state agency physician's opinions that Plaintiff was capable of medium work.

The ALJ also considered a November 2014 letter from Dr. Krebsbach stating that Plaintiff had been a patient at Partnership Health Center since 2010 and had "a diagnosis of chronic back pain secondary to degenerative arthritis in her cervical spine and low back." (Doc. 6, at 436). Dr. Krebsbach stated that Plaintiff also had "a diagnosis of depression and anxiety" and was being treated for those conditions, but said nothing about the severity of Plaintiff's symptoms or any limitations or restrictions. (Doc. 6, at 436). Because Dr. Krebsbach's letter simply set forth Plaintiff's diagnoses and the name of the treating facility, the ALJ permissibly gave it little weight other than for diagnostic purposes. (Doc. 6, at 40).

## C. Other Source Opinions

### 1. <u>Licensed Clinical Social Worker</u>

Plaintiff argues the ALJ should have given more weight to the opinion of Nathan Hoyme, a licensed clinical social worker at Partnership Health Center. Hoyme met with Plaintiff for the first time in October 2014, and in April 2015 he wrote a letter in support of her claim for disability benefits. (Doc. 6, at 439). Hoyme wrote that Plaintiff's anxiety and depression caused "significant distress or impairment in both social and occupational areas of functioning," and that she would have difficulty consistently following instructions, coping with normal workplace pressures, and maintaining regular attendance. (Doc. 6, at 440).

As a social worker, Hoyme does not qualify as an acceptable medical source. 20 C.F.R. §§ 404.1513(a),(d), 416.913(a),(d); SSR 06-3p. Other sources are not qualified to provide medical opinions, but can provide evidence about the severity of a claimant's impairments and how they affect the claimant's ability to work. *See* 20 C.F.R. § 404.1513. While an ALJ must provide specific and legitimate reasons based on substantial evidence to discount evidence from an "acceptable medical source," evidence from an "other source" like Hoyme is not entitled to the same deference and may be discounted if the ALJ provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012).

The ALJ discussed Hoyme's opinion at step two when evaluating the severity of Plaintiff's mental impairments but gave it little weight because it was not consistent with the "multiple mental examinations during [Plaintiff's] incidental treatment appointments with physicians" showing that Plaintiff had normal mental functioning. (Doc. 6, at 35). Plaintiff's treating physicians at Partnership Health Center conducted routine mental status examinations and consistently found that she was alert, demonstrated appropriate mood and affect, and had good judgment and insight. (Doc. 6, at 392, 395, 400, 408, 416, 425, 427, 429, 454, 462). The ALJ permissibly discounted Hoyme's opinion because it was not consistent with findings of Plaintiff's treating physicians whose records

reflected that her anxiety and depression were effectively managed on medication.

2.    Physician Assistant

Plaintiff next argues the ALJ erred by not giving more weight to the opinion

of Lila Erickson, a physician assistant at Partnership Health Care. In April 2015,

Erickson wrote a letter stating that Plaintiff had been a patient at Partnership

Health Care since 2010, and had been diagnosed with degenerative disc disease.

Erickson wrote that Plaintiff would most often present for flares of pain that were

triggered by moving wrong, lifting wrong, or falls, but was unable to give an up to

date diagnosis because Plaintiff had begun seeing a different doctor. Erickson also

explained that Plaintiff had been receiving treatment for ongoing depression and

anxiety, was on medication, and was engaged in ongoing counseling. (Doc. 6, at

438).

For claims filed after March 27, 2017, acceptable medical sources include

licenses advanced practice nurses and licensed physician assistants. 20 C.F.R. §

404.1502(a). Under the regulations in effect at the time of the ALJ's decision in

December 2015, however, a physician assistant was not considered an acceptable

medical source. 20 C.F.R. § 404.1513(a) (2015). Thus, the ALJ could reject

Erickson's opinion for germane reasons. *Molina*, 674 F.3d at 1111.

The ALJ considered Erickson's letter and gave it some weight. In doing so,

the ALJ accurately pointed out that Erickson's letter appeared "to be a summary report of the treatment and diagnoses indicated in [Plaintiff's] treatment record" and Partnership Health Center, and was "not necessarily Erickson's opinion." (Doc. 6, at 35). The ALJ found that Erickson's report was "wholly supported by the treatments records provided by the Partnership Health Center" and essentially adopted her summary of Erickson's diagnoses and treatment. The ALJ discussed the underlying treatment records, including Erickson's treatment notes, and reasonably found that while Plaintiff was being treated for anxiety and depression, there was no evidence that her mental impairments cause more than minimal limitations. Plaintiff has not shown that the ALJ erred in his evaluation of the other source evidence in the record.

### D.    Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide sufficiently clear and convincing reasons for discounting her subjective symptom testimony.

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."

*Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found that Plaintiff met her initial burden because she produced evidence that she has medically determinable mental impairments that could reasonably be expected to cause her alleged symptoms. (Doc. 6, at 37). The ALJ then found that Plaintiff's subjective "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Doc. 6, at 37).

Plaintiff argues the ALJ impermissibly considered her daily activities when evaluating her symptom testimony. But the ALJ did not cite Plaintiff's daily activities as a basis for discounting her subjective allegations. Rather, she pointed out that Plaintiff's reported activities of daily living were not entirely consistent with the "other source" opinion of an independent living specialist. (Doc. 6, at 39). For example, the ALJ noted that Plaintiff reported riding the bus to the grocery store several times a week and carrying two bags a time, taking hour-long daily walks by the river, and walking to the library every day and sitting and reading

newspapers for newspapers for an hour. The ALJ reasonably found that those reported activities were not entirely consistent with the independent living specialist's opinion that Plaintiff was limited to occasionally lifting/carrying ten pounds, sitting for 45 minutes at one time, and standing /walking for one hour in an eight hour work day. (doc. 6, at 39). Even if the ALJ did err by considering Plaintiff's daily activities when evaluating her symptom testimony, the error was harmless because she otherwise provided sufficiently clear and convincing reasons for discounting her testimony.

For example, the ALJ found Plaintiff's history of conservative treatment was not entirely consistent with her allegations of disabling pain. The ALJ noted there were significant gaps in Plaintiff's treatment history, and no treatment records whatsoever for the three year period between her April 2009 alleged onset date and August 2012. The ALJ further noted that when Plaintiff did receive treatment, it was conservative in nature. The ALJ cited records showing that Plaintiff's symptoms were reasonably controlled on medication, and that she did not always follow her prescribed course of treatment. (Doc. 6, at 37-38, 406, 409, 460, 462, 469). The ALJ permissibly discounted Plaintiff's subjective symptom testimony in part based on gaps in her treatment history and the conservative nature of her treatment. See *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (the ALJ may

consider evidence of conservative treatment when evaluating subjective symptom testimony); *Molina*, 674 F.3d at 1113 (the ALJ may consider evidence of infrequent treatment when evaluating subjective symptom testimony).

The ALJ also cited inconsistencies in Plaintiff's statements as an additional reason for finding her less than entirely credible. In particular, the ALJ pointed out that Plaintiff testified that she could only walk for five to ten minutes before needing a break, but indicated on an Adult Function Report that she walked two miles per day, weather permitting. See *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ may consider inconsistencies when evaluating subjective symptom testimony).

These were sufficiently clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

### E.     Duty to Conduct a Full and Fair Hearing and Develop the Record

Plaintiff argues the ALJ did not satisfy her duty to conduct a full and fair hearing, and did not adequately develop the record as to her mental impairments.

The ALJ has a duty to conduct a full and fair hearing. *McLeod v. Astrue¸* 640 F.3d 881, 885 (9th Cir. 2011). Plaintiff argues the ALJ did not conduct a full and fair hearing because she had not received written notice of her right to representation prior to the hearing, and the ALJ's summary of that right just before

the hearing commenced was not sufficient to ensure that Plaintiff's interests were protected. While the May 2015 hearing notice did not set forth Plaintiff's right to representation (doc. 6, at 187), the May 2014 notice of disapproved claim contained written notice of Plaintiff's right to representation prior to the hearing. (Doc. 6, at 161-62). In addition, the ALJ not only summarized Plaintiff's right to representation at the hearing but also confirmed that Plaintiff understood that right and did not want representation. (Doc. 6, at 52). This was sufficient to protect Plaintiff's interests. See *Roberts v. Shalala*, 644 F.3d 931, 934 (9th Cir. 2011) (stating that the Commissioner has no disclosure requirements regarding the right to representation beyond those set forth in 42 U.S.C. § 404(c), which states that a claimant should be notified in writing of the options for obtaining an attorney).

Plaintiff further maintains the ALJ did not give her the opportunity to question the vocational expert or pose hypothetical questions. But the ALJ specifically asked Plaintiff if she had any question for the vocational expert, and Plaintiff responded that she did not. (Doc. 6, at 103). The ALJ repeatedly explained the hearing process to Plaintiff, and Plaintiff never indicated that she was confused. In fact, the ALJ helped Plaintiff question the vocational expert when Plaintiff raised the issue of numbness in her arm. (Doc. 6, at 103-05). The ALJ thus satisfied her duty to provide Plaintiff with a full and fair hearing.

The ALJ also has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown v. Heckler*, 713 F.2d 441 443 (9th Cir. 1983)). Where, as here, the claimant is unrepresented, the ALJ must be particularly diligent in developing the relevant facts. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's duty to develop the record is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. *Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992). But this duty is only triggered if the evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence. *Smolen*, 80 F.3d at 1288.

The record contained sufficient evidence for the ALJ to reach a reasoned decision as to the severity of Plaintiff mental impairments. The ALJ reasonably determined based on the medical records and the opinions of the state agency physicians that Plaintiff's anxiety and depression did not cause more than minimal limitations. Because the evidence relating to Plaintiff's mental impairments was both sufficient and unambiguous, the ALJ was not required to further develop the record.

**IV.    <u>Conclusion</u>**

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 28th day of September, 2018

_____
Jeremiah C. Lynch
United States Magistrate Judge